### John Nullmeyer v. Fredricka Nullmeyer.

1. *Divorce Proceedings—Evidence Must Support the Decree.*—Where, in a proceeding for divorce, the cause is submitted to a jury, the evidence must be sufficient to support the verdict, or a decree based upon it will be set aside.

2. *Divorce—Cruelty—Condonation.*—Acts of cruelty, considered as a cause for divorce, may be condoned. *So held* where the only acts complained of as grounds of divorce, were two, between 1874 and 1875, another in 1882, and an accusation of adultery in 1886, the parties continuing to live together as husband and wife in a peaceable and contented way for over four months after the accusation of adultery was made, when the wife abandoned the husband without any new cause.

3. *Divorce—Accusation of Unchastity in Connection with Acts of Cruelty.*—In a proceeding for divorce, it was shown in connection with some acts of cruelty, that the husband had accused his wife of adultery. The court refused to allow him to show what cause his wife had given

him to suspect her of unchastity. *This was held error*, because it might have explained the animus of the charge of adultery and show that it was not maliciously made, and might possibly show that the accusation was true.

4. *Divorce—Delay in Separation — Condonation.—* Where delay in separation has occurred, the party bringing the suit must in some way account for such delay, for, in the absence of the explanation, the court ought not to be called upon to relieve a party of that which his own conduct has shown to be not grievous to him.

5. *Condonation—Revival of Former Course of Action.—*Evidence of an unjustifiable act of cruelty in 1874, followed by cohabitation for six months, and another act of cruelty, under considerable provocation, followed by peaceful cohabitation till 1882, when defendant threatened to shoot complainant if she disobeyed his request not to go to a dance, which she did, and left him for six months, returning to him and abiding with him till 1886. In 1886 he accused her of adultery, after which she lived with him for months before leaving him. *It was held*, that such action was insufficient to support a decree of divorce for cruelty, and should be such condonation as to bar a suit. *It was held also*, that the latter accusation did not renew the former acts of cruelty.

**Memorandum.**—Suit for divorce. Appeal from a decree rendered by the Circuit Court of Peoria County; the Hon. N. E. WORTHINGTON, Judge, presiding. Heard in this court at the May term, A. D. 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, PAGE & PUTERBAUGH, ATTORNEYS.

" When delays occur, it must in some way be accounted for, because in the absence of explanation the court should not be called on to meddle with what the complaining party showed, by his conduct through a considerable series of years, to be to him no grievance." Bishop on Marriage and Divorce, Vol. 2, Sec. 205 ; Fellows v. Fellows, 8 N. H. 160 ; Hutchins v. Hutchins, (Ill.), 29 N. E. Rep. 888; Youngs v. Youngs, 130 Ill. 230.

It must appear that at the time complainant filed her bill, she had reasonable ground to apprehend a repetition of such offenses in the future. Courts do not grant divorces on the ground of cruel treatment as a punishment of offenses long since committed. Newell's Sackett's Instructions, p. 175, Sec. 19.

It is only competent to show false charges of unchastity in connection with acts of cruelty, to characterize those acts, but under no circumstances are they grounds for divorce. Ward v. Ward, 103 Ill. 477.

APPELLEE'S BRIEF, GEORGE B. FOSTER, ATTORNEY.

Condonation is defined in the books, as forgiveness upon condition the injury shall not be repeated, and is dependent upon future good usage and conjugal kindness. Bishop on Marriage and Divorce, Sec. 370.

But condonation is always accompanied, not only with the implied condition that the injury shall not be repeated, but also that the offending party will ever thereafter treat the other with conjugal kindness. Davis v. Davis, 19 Ill. 334.

The facts proven in this case constitute a clear breach of the condition of kind treatment implied in every act of condonation.

Appellee could justly conclude the abusive language would be followed, as on former occasions, with personal violence. Farnham v. Farnham, 73 Ill. 497.

OPINION OF THE COURT, LACEY J.

This was a bill filed in the Peoria Circuit Court by appellee against appellant, for divorce. The bill charged that the parties were intermarried in January, 1874, and for grounds of divorce it alleged that shortly after the said marriage the appellant commenced ill-treating the appellee and continued such ill-treatment up to about March 29, 1887, during which said period the appellant was guilty of extreme and repeated cruelty; that he frequently struck her, choked her and threatened to shoot her, and that by reason of his extreme and repeated cruelty to her she was compelled, on the day and year last aforesaid, or about that time, to leave said appellant. The appellant answered, denying the charges of the bill. The cause was submitted to a trial before a jury and resulted in the jury rendering a verdict against the appellant, whereupon he moved the court to set aside the verdict and grant a new trial, but the court denied

the motion and rendered a decree, and from that decree this appeal is taken. The main ground insisted upon in this court for a reversal is that the evidence is not sufficient to sustain the verdict. We have examined the evidence carefully and have come to the conclusion that the appellant's complaint is just, and that the evidence is insufficient to sustain the verdict. The substance of the proof is that the appellee and appellant were married in 1874; that about six months thereafter upon an occasion of his being locked out of the house at night, appellant broke in the door and caught his wife by the throat, and with a hatchet in his hand threatened to kill her if she ever locked him out again; no other assault was ever made upon her by him except about six months after that he threw his crutch at her, because she cut the hose when he was trying to bathe his leg for rheumatism, thus preventing him from doing so; and in about seven years thereafter, in 1882, he drew a revolver on her and threatened to shoot her and the man she danced with, if she went to a certain dance; she went, notwithstanding his objections, and after the dance left him for a day and refused to come home. But she came back, however, and they lived together as man and wife until 1886, when she again left him for about three weeks for accusing her with committing adultery with one Anderson, and then came back to him and they lived together as man and wife until in March, 1887. About four months after she had returned to him, she again finally abandoned him for no cause shown. We think the main cause of complaint and ground for divorce had been condoned after the parties had lived together for so long a time. There were but one or two acts of cruelty, that of throwing the hatchet and crutch, and the throwing of the latter was under considerable provocation. What could be more contemptible, mean and spiteful than for a woman to cut the hose while her husband was trying to alleviate his suffering while bathing his leg. But the acts of cruelty, whatever they might amount to, were condoned by the parties living together until 1886. The drawing of the pistol was not an assault, but simply a threat, and the charge of

adultery seems to have been made under considerable provocation. The appellee disobeyed her husband and went with male company that he did not like to have her go with, and the evidence shows that Mr. Anderson was a very frequent visitor, coming there nearly every day while appellant was sick, so much so as to arouse his suspicions. The appellant was no doubt jealous on account of these unwelcome attentions to his family by Anderson, but whether he had cause for it is not shown.

We think, however, the court should have permitted the appellant to show what cause appellee had given him to suspect her of unchastity. It might explain the animus of the charge of adultery and show that it was not maliciously made, and might possibly show that it was true. On the question of condonation, Bishop lays down in his work on Marriage and Divorce, Vol. 2, Sec. 342, the following rule of law, to wit: "It is unquestionably sound American law, that under many circumstances the complainant must in some way satisfy the court in respect to his delay or he can not have the divorce he prays." The same author in Sec. 105 says: "When delays occur it must in some way be accounted for, because in the absence of explanation the court should not be called on to meddle with what the complaining party showed, by his conduct through a considerable series of years, to be to him no grievance." See also Youngs v. Youngs, 130 Ill. 230; Hutchins v. Hutchins (Ill.), 29 N. E. Rep. 888. In the case before us the only acts complained of for grounds of divorce were two between 1874 and 1875, and the third in 1882; then the charge of adultery in 1886, and after this last charge appellant and appellee continued to live together as man and wife in a peaceable and contented way for over four months, when the appellee abandoned her husband without any new cause. We think the evidence entirely too weak to sustain the charges of the bill. The jury, we think, were not justified in finding the verdict in favor of appellee; the court should have granted a new trial. For refusing to do so, the decree is reversed and the cause remanded.